**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MOHAMED ARAB, | |
| Plaintiff, | |
| v. | |
| ANTONY BLINKEN, *in his official capacity* | Civil Action No. 21-1852 (BAH) |
| *as Secretary of State*, *et al.*, | Chief Judge Beryl A. Howell |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiff Mohamed Arab, a U.S. citizen, seeks to compel defendants—various federal officials in their official capacities—to adjudicate his wife's visa application, which has been pending without decision for over two years. Compl. ¶¶ 1, 14, ECF No. 1. Plaintiff claims defendants have unreasonably delayed the visa application, in violation of the Administrative Procedures Act ("APA") and the Mandamus Act, *id.* ¶¶ 19, 33–34, and have done so intentionally by applying the policies of the Controlled Application Review and Resolution Program ("CARRP") to their review of the visa application, in violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, Article 1, Section 8, Clause 4 of the U.S. Constitution, the Fifth Amendment of the U.S. Constitution, and the APA, *id.* at 8–9. Defendants have moved to dismiss this case for lack of jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, for failure to state a claim under Rule 12(b)(6). Defs.' Mot. Dismiss & Mem. Supp. Mot. Dismiss ("Defs.' Mot."), at 1, ECF No. 6. While contesting defendants' challenges under Rules 12(b)(1) and 12(b)(6), plaintiff moves for summary judgment. Pl.'s Mot. Summ. J. ("Pl.'s Mot."), at 1, ECF No. 9. For the reasons set forth below, plaintiff's motion for summary judgment is denied and defendants' motion to dismiss is granted.

1

## I.     BACKGROUND

Following a brief review of the statutory and regulatory background, the factual history underlying the claims and procedural history of this case are summarized below.

### A.     Statutory and Regulatory Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, authorizes the issuance of visas to different categories of immigrants, including relatives of U.S. citizens.  8 U.S.C. § 1154; 8 C.F.R. §§ 204.1(a)(1), (b).  A U.S. citizen seeking to obtain lawful permanent resident status for an immediate relative, including a spouse, must file a Form I-130, Petition for Alien Relative, with U.S. Customs and Immigration Services ("USCIS").  8 U.S.C. §§ 1154, 1151(b)(2)(A)(i) (defining a spouse as an "immediate relative" for the purposes of Form I-130 petitions); 8 C.F.R. § 204.1(a)(1).  If USCIS approves the petition, the case is forwarded to the National Visa Center ("NVC"), the Department of State processing center.  8 C.F.R. § 204.2(a)(3).  The foreign spouse must then submit additional paperwork and fees to NVC.  22 C.F.R. § 42.67.  After processing the requisite materials, NVC schedules an interview for the applicant with a consular officer at the embassy with jurisdiction over the applicant's residence.  *Id.* § 42.62.  Following the interview, the consular officer must either issue or refuse the visa.  *Id.* § 42.81(a).

### B.     Factual Background

In October 2018, plaintiff filed a visa petition on his wife's behalf with USCIS, hoping to have her join him in the United States as a lawful permanent resident.  Compl. ¶¶ 14–15.  Although USCIS approved the petition in October 2019, *id.* ¶ 14, and plaintiff has paid all the requisite fees, *id.* ¶ 25, the application has yet to be finally adjudicated, *id.* ¶ 1.  The next step in the process is for plaintiff's wife to attend a consular interview in Jordan so that her visa application can be finally adjudicated.  22 C.F.R. § 42.62; *see* Compl. ¶ 12.  The application remains, however, at

NVC, without NVC scheduling a consular interview. *See* Compl. ¶ 14 (identifying plaintiff's State Department receipt number); *Visa Status Check*, U.S. DEP'T OF STATE, https://ceac.state.gov/CEACStatTracker/Status.aspx (last visited Apr. 19, 2022) (showing plaintiff's case status, based on the provided receipt number, as "At NVC").

In March 2020, the State Department temporarily suspended visa services at all U.S. embassies and consulates, including the embassy in Jordan, due to the onset of the COVID-19 pandemic. *Suspension of Routine Visa Services*, U.S. DEP'T OF STATE, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-news-archive/suspension-of-routine-visa-services.html (July 22, 2020).[1]  In July 2020, the State Department authorized a phased resumption of visa services. *Id*.  Subsequently, in November 2021, the State Department returned broad discretion to embassies and consulates in determining how to prioritize appointments as safely as possible in all visa categories. *Visa Services Operating Update*, U.S. DEP'T OF STATE, https://travel.state.gov/content/travel/en/News/visas-news/visa-services-operating-status-update.html (Nov. 19, 2021).

Despite efforts to resume pre-pandemic processing capabilities, many embassies and consulates face substantial backlog of immigrant visa applications. *See* Briefing, Julie Stufft, Acting Deputy Assistant Secretary, Bureau of Consular Affairs, U.S. Dep't of State, Update on U.S. Immigrant Visa Processing at Embassies and Consulates (Mar. 9, 2021), https://www.state.gov/briefings-foreign-press-centers/update-on-u-s-immigrant-visa-processing-at-embassies-and-consulates/.  This backlog has caused increased wait times for individual applicants awaiting an appointment date from NVC. *Id*.  According to the State Department's website, the U.S. Embassy in Amman, Jordan, much like other embassies around the world, is

---

[1]     The Court may take judicial notice of information posted on official public websites of government agencies. *See Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013).

experiencing substantial pandemic-related backlog in every visa category, resulting in significant delays in the scheduling of consular interviews. *See Immigrant Visas*, U.S. EMBASSY IN JORDAN, https://jo.usembassy.gov/visas/immigrant-visas/ (last visited Apr. 19, 2022). Nonetheless, the State Department has publicly committed "to resolve backlogs and process visas as quickly and efficiently as [it] can" while also ensuring that the "health and safety of [its] personnel and [its] clients] coming into [the] consular sections abroad" remains "the department's highest priority during the pandemic." Briefing, Julie Stufft, Acting Deputy Assistant Secretary, Bureau of Consular Affairs, U.S. Dep't of State, Update on U.S. Immigrant Visa Processing at Embassies and Consulates (Mar. 9, 2021), https://www.state.gov/briefings-foreign-press-centers/update-on-u-s-immigrant-visa-processing-at-embassies-and-consulates/.

Despite plaintiff's repeated attempts to contact NVC regarding his case, NVC has yet to provide any meaningful status update or any information on processing times. Compl. ¶¶ 16–17. As a result, plaintiff and his wife have remained separated for three years and six months with no indication as to when the delay in adjudicating the application may be resolved. This prolonged separation has resulted in a "profound and negative impact" on the couple. *Id.* ¶ 18.

### C.     Procedural Background

On July 12, 2021, plaintiff commenced this action seeking "to compel the [d]efendants to take action on and adjudicate" his wife's visa application and asserting that, in failing to schedule a consular interview, defendants have unreasonably delayed the visa application in violation of the APA and the Mandamus Act. *Id.* ¶¶ 1, 19, 33. Plaintiff also claims that defendants have unlawfully delayed his visa application, pursuant to CARRP, a policy of the Department of Homeland Security designed "to investigate and adjudicate applications deemed to present potential 'national security concerns,'" *id.* ¶¶ 37, 39, which policy, according to plaintiff, "intentionally delays the

applications of Muslims or those from predominantly Muslim countries due to perceived security concerns," *id.* ¶¶ 36–39.

As noted, pending before the Court is defendants' motion to dismiss and plaintiff's motion for summary judgment on his APA, Mandamus, and CARRP claims. *See generally* Defs.' Mot.; Pl.'s Mot.; Pl.'s Mem. Opp'n Defs.' Mot. Dismiss & Supp. Pl.'s Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 8. Both motions are now ripe for review.

## II.     LEGAL STANDARD

### A.     Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)), and "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto," *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 980 (D.C. Cir. 2017) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff thus "bears the burden of invoking the court's subject matter jurisdiction." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

When a jurisdictional argument "present[s] a dispute over the factual basis of the court's subject matter jurisdiction," "the court must go beyond the pleadings and resolve" any dispute necessary to the disposition of the motion to dismiss. *Feldman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018) (alteration in original) (quoting *Phoenix Consulting v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)). The court must accept as true "material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir.

2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  In addition, however, the "court may properly consider . . . evidentiary material in the record," again affording the plaintiff "the benefit of all reasonable inferences."  *Feldman*, 879 F.3d at 351.

        **B.**        **Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).  In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact."  *Twombly*, 550 U.S. at 555.  Courts do not, however, "assume the truth of legal conclusions, nor do [they] 'accept inferences that are unsupported by the facts set out in the complaint.'"  *Arpaio*, 797 F.3d at 19 (internal citation omitted) (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)).  "In determining whether a complaint fails to state a claim," a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [courts] may take judicial notice."  *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997)).

## III.    DISCUSSION

Defendants move to dismiss, under Rules 12(b)(1) and (6), on three grounds: first, plaintiff has improperly named as defendants officials who cannot provide the relief plaintiff seeks, Defs.'

Mot. at 5–6; second, plaintiff fails to state a claim of unreasonable delay in the adjudication of

plaintiff's visa application under the APA and Mandamus Act, *id.* at 6; and, finally, plaintiff's

claim of intentional and unreasonable delay based on the CARRP fails to state a claim because it

relies on nothing more than speculation, *id.* at 16.[2]  For the reasons explained below, defendants'

motion to dismiss is granted on all three grounds.[3]  After addressing threshold questions of

jurisdiction, each merits argument is addressed in turn.

### A.     Plaintiff Claims Against Certain Federal Officials Are Moot

Defendants contend that claims asserted against officials from the Department of

Homeland Security and its component, USCIS, should be dismissed under Rule 12(b)(1) because

those officials have completed their role with respect to plaintiff's visa application and therefore

cannot provide the relief plaintiff seeks.  *Id.* at 5–6.[4]

---

[2]     Plaintiff's argument that defendants' motion should be denied for failure to comply with D.D.C. Local Civil Rule 7(n)(1), Pl.'s Opp'n at 15, is without merit.  Local Civil Rule 7 states, in relevant part, "the agency must file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion."  D.D.C. LCvR 7(n).  Defendants acknowledge the omission of an index of an administrative record contemporaneously with the dispositive motion, positing that the index requirement "does not apply" because "the basis for [plaintiff's] challenge is not final agency action, but rather agency inaction."  Defs.' Mot. at 15 n.4.  In the alternative, if this Court deems this Local Civil Rule applicable here, defendants formally move to waive compliance with the requirements of the rule.  Defs.' Reply Supp. Mot. Dismiss & Opp'n Pl.'s Mot. Summ. J. (Defs.' Opp'n") at 11 n.1, ECF No. 11.  Following the general practice in this Court, defendants' motion to waive compliance with Local Civil Rule 7(n) is granted because "the administrative record is not necessary for [the court's] decision."  *Connecticut v. U. S. Dep't of Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (alteration in original) (quoting *Mdewakanton Sioux Indians of Minn. v. Zinke*, 264 F. Supp. 3d 116, 123 n.12 (D.D.C. 2017) and citing *PETA v. U.S. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 94 n.2 (D.D.C. 2014)).

[3]     Plaintiff's motion for summary judgment includes allegations, exhibits, and other evidence not included or referenced in the Complaint.  *See, e.g.*, Decl. of Mohamed Arab, ECF No. 8-3.  This factual matter need not be considered, however, since defendants' motion to dismiss may be resolved based solely on the facts in the Complaint.  Even if the additional factual allegations and evidence were considered, resolution of the pending motions would not be altered.

[4]     Plaintiff argues that the doctrine of consular nonreviewability does not bar judicial review of plaintiff's claims, Pl.'s Opp'n at 9, but this is simply beside the point here.  The doctrine of consular nonreviewability shields a *consular* official's decision to grant or deny a visa from judicial review, "at least unless Congress says otherwise."  *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999).  "[T]he doctrine of consular nonreviewability is not triggered," where, as here, "a consular officer" has not rendered a final decision and the visa application remains under consideration.  *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016); *see* Compl. ¶ 1.  Thus, the doctrine has no bearing on this case and defendants' 12(b)(1) argument does not rest on its application.

"Article III of the Constitution limits federal-court jurisdiction to 'cases' and 'controversies.'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016) (quoting U.S. Const. art. III, § 2). The Supreme Court has interpreted this requirement "to demand that 'an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed.'" *Id.* (omission in original) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). "[A] case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Porzecanski v. Azar*, 943 F.3d 472, 479 (D.C. Cir. 2019) (quoting *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013)); *see also United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (requiring the resolution of a dispute to "have direct consequences on the parties involved" (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013))). The initial "heavy burden" of establishing mootness lies with the party asserting a case is moot, *see Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998), but the opposing party bears the burden of showing an exception applies, *see S. Co. Servs., Inc. v. FERC*, 416 F.3d 39, 43 (D.C. Cir. 2005). "A case that becomes moot at any point during the proceedings is 'no longer a "Case" or "Controversy" for purposes of Article III,' and is outside the jurisdiction of the federal courts." *Sanchez-Gomez*, 138 S. Ct. at 1537 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

Plaintiff's claims against officials from the Department of Homeland Security and USCIS are moot. When plaintiff filed his complaint, USCIS, a component of the Department of Homeland Security, had already approved plaintiff's visa petition and forwarded it to NVC for further processing. Compl. ¶¶ 1, 14. Accordingly, the Department of Homeland Security's and USCIS' roles in processing the visa application are complete. For the application process to proceed, the Department of State must schedule a consular interview, after which a consular officer will issue

or refuse the visa.  22 C.F.R. §§ 42.62, 42.81.  Even assuming officials from the Department of

Homeland Security and USCIS "share security information with other agencies," Pl.'s Opp'n at 9,

plaintiff has not alleged facts to support the claim that officials from the Department of Homeland

Security or USCIS have continued involvement in processing the application for plaintiff's wife.

In the absence of such supporting facts, plaintiff has not adequately alleged ""an actual and

concrete dispute' exists between the parties."  *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-

cv-1262 (RC), 2021 WL 5998385, at \*4 (D.D.C. Dec. 20, 2021) (dismissing similar claims

asserted against officials from the Department of Homeland Security and USCIS for failure to

allege sufficient facts showing an actual controversy between the parties (citing *Sanchez-Gomez*,

138 S. Ct. at 1537)); *Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-cv-376 (RC), 2021 WL

4191958, at \*3 (D.D.C. Sept. 15, 2021) (same).  Accordingly, plaintiff's claims against officials

from the Department of Homeland Security and USCIS must be dismissed as moot.[5]

### B.   Plaintiff Fails to State a Claim of Intentional Delay Based on CARRP

Plaintiff alleges that defendants are "intentionally delaying this visa application" pursuant

to CARRP.  Compl. ¶ 39.  Specifically, plaintiff alleges that the Department of Homeland Security

uses CARRP to "intentionally delay[] the applications of Muslims or those from predominantly

Muslim countries due to perceived security concerns."  *Id.* ¶ 36.  In response, defendants asserts

---

[5]      Defendants raise substantially the same argument under Rule 12(b)(6) with respect to claims asserted against officials from the Department of Justice and FBI.  Defs.' Mot. at 6.  The above reasoning may apply with equal force. *Mahmood*, 2021 WL 5998385, at \*4 n.2 (considering defendants' Rule 12(b)(1) and Rule 12(b)(6) claims together because the defendants "[did] not indicate how [the] 12(b)(6) claim would be analyzed any differently").  As with his claims against officials from the Department of Homeland Security and USCIS, plaintiff has not stated facts to show how officials from the Department of Justice and FBI have any involvement in the remaining steps of the visa processing.  *See id.* at \*4.  Thus, claims against these officials also may be dismissed as moot.  *Sanchez-Gomez*, 138 S. Ct. at 1537.  Alternatively, plaintiff's claims may be dismissed under 12(b)(6) for failure to state a claim because plaintiff has not alleged sufficient facts to show that officials from the Department of Justice or FBI had any hand in causing the complained-of delay in the processing of the visa application.  *Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (quoting *Twombly*, 550 U.S. at 555)).

that this claim fails because plaintiff "offers nothing more than speculation that CARRP has played

any role in the [d]elay." Defs.' Mot. at 16. Defendants are correct.

Plaintiff has not set forth sufficient factual allegations to support his CARRP claim, relying

instead "on information and belief" that defendants "are intentionally delaying this visa application

because of an application of the CARRP program." Compl. ¶ 39. The complaint, however,

contains no allegations to support that USCIS and the Department of Homeland Security are still

involved or are using CARRP "to investigate or adjudicate" the visa application at this point in the

processing. *Id.* ¶ 37. Courts "do not assume the truth of legal conclusions, nor do [they] 'accept

inferences that are unsupported by the facts set out in the complaint.'" *Arpaio*, 797 F.3d at 19

(internal citation omitted) (quoting *Islamic Am. Relief Agency*, 477 F.3d at 732). Given the lack

of factual support, defendants' motion to dismiss the CARRP claim is granted. *See Ghadami v.*

*U.S. Dep't of Homeland Sec.*, No. 19-cv-00397, 2020 WL 1308376, at *6 (D.D.C. Mar. 19, 2020)

(dismissing a similar claim because plaintiffs failed to "set forth any factual allegations to support"

the conclusion that defendants intentionally delayed plaintiffs' visa application pursuant to

CARRP); *Mahmood*, 2021 WL 5998385, at *6 (same); *Al-Saadoon v. Barr*, 973 F.3d 794, 804

(8th Cir. 2020) (affirming a dismissal of CARRP claims on the same ground).[6]

---

[6]      Indeed, CARRP is a USCIS policy, and USCIS has completed its role in processing the application.
Moreover, as several other courts have found, publicly available documents released by USCIS state that CARRP
*does not* apply to I-130 petitions. *See Mahmood*, 2021 WL 5998385, at *5–6 & *5 n.6 (citing U.S. Citizenship and
Immigr. Servs., *Fraud Detection & National Security Controlled Application Review and Resolution Program
(CARRP) Independent Study* 28 (Dec. 28, 2011), https://www.aclusocal.org/sites/default/files/wp-
content/uploads/2013/01/FDNS-CARRP-Independent-Study-Powerpoint-v.-1.1-Dec.-28-2011.pdf); *Ghadami*, 2020
WL 1308376, at *6; *Alshawy v. U.S. Citizenship & Immigr. Servs.*, No. 21-cv-2206 (FYP), 2022 WL 970883, at *4
(D.D.C. Mar. 30, 2022); *see also Abbas v. U.S. Dep't of Homeland Sec.*, 20-cv-03192 (CJN), 2021 WL 3856625, at
*2 n.3 (D.D.C. Aug. 29, 2021) (noting that CARRP is not used in the Form I-130 context). Consequently, plaintiff's
unsupported allegations fail to establish that CARRP played or continues to play a role in any delay in processing
the visa application at issue.

**C.      The Alleged Delay in Rendering a Decision on Plaintiff's Application Is Not Unreasonable, so Plaintiff's Claims Are Dismissed for Failure to State a Claim**

Plaintiff's only remaining claim is that defendants have unreasonably delayed the processing and adjudication of his wife's visa application under the APA and Mandamus Act. Compl. ¶¶ 19, 33.  The government contends that plaintiff's claim must fail, as a matter of law, because the 30-month delay at issue in this case is not unreasonable.  Defs.' Mot. at 6.[7]

The APA requires agencies to "proceed to conclude a matter presented to [them]" in a "reasonable time," 5 U.S.C. § 555(b), and authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1).  In determining whether a delay in agency action is unreasonable, the D.C. Circuit has enumerated six factors for consideration:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with
> which it expects the agency to proceed in the enabling statute, that statutory scheme
> may supply content for this rule of reason; (3) delays that might be reasonable in
> the sphere of economic regulation are less tolerable when human health and welfare
> are at stake; (4) the court should consider the effect of expediting delayed action on
> agency activities of a higher or competing priority; (5) the court should also take
> into account the nature and extent of the interests prejudiced by delay; and (6) the
> court need not find any impropriety lurking behind agency lassitude in order to hold
> that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (internal quotation marks and citations omitted).  This standard applies to claims of unreasonable delay under both the Mandamus Act and the APA.  *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004); *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).  Applying the

---

[7]      The last government action on this matter is dated October 2019.  Compl. ¶ 14.

facts in the record to the *TRAC* factors shows that the complaint fails to state a claim that action

on plaintiff's application has been unreasonably delayed.

>       **1.      *TRAC Factors 1 & 2***

The first and second *TRAC* factors, on balance, weigh in favor of defendants.  The first

factor is the most important *TRAC* factor, *In re Core Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir.

2008), and is "typically considered together" with the second *TRAC* factor, *Milligan v. Pompeo*,

502 F. Supp. 3d 302, 317 (D.D.C. 2020).

As defendants correctly point out, "Congress has established no firm timetable for

scheduling the visa interview at issue," Defs.' Mot. at 9; *see also Mahmood*, 2021 WL 5998385,

at *7 (finding the same).  Instead, Congress has given "agencies wide discretion in the area of

immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (finding

that a two-year delay in processing a visa application "does not typically require judicial

intervention").  Looking to "supply content for th[e] rule of reason," *TRAC*, 750 F.2d at 80,

plaintiff points to 8 U.S.C. § 1571(b), the preamble to legislation providing for the institution of

measures to reduce the backlog in processing of immigration benefits by the now-defunct

Immigration and Naturalization Service, that states "[i]t is the sense of Congress that the

processing of an immigration benefit application should be completed not later than 180 days [or

six months] after the initial filing of the application," Pl.'s Opp'n at 10–11 (alteration in original)

(quoting 8 U.S.C. § 1571(b)); Pl.'s Reply Supp. Mot. Summ. J. ("Pl.'s Reply") at 5, ECF No. 13.

Plaintiff argues that this language is evidence that Congress intended to set a six-month timetable

for the Department of State's processing of applications.  Pl.'s Opp'n at 10–11; Pl.'s Reply at 5.

This Court has previously found § 1571(b) to add some weight in a plaintiff's favor for the

second *TRAC* factor.  *See Nibber v. U.S. Citizenship and Immigr. Servs.*, No. 20-cv-3207 (BAH),

2020 WL 7360215, at *6 & n.5 (D.D.C. Dec. 15, 2020) (collecting cases finding 8 U.S.C § 1571(b) relevant to the *TRAC* analysis in cases involving unreasonable delay by USCIS in adjudicating immigration benefit applications).   As defendants, however, point out, plaintiff has failed to identify any authority holding that the preamble applies to the Department of State's scheduling of visa application interviews.   Defs.' Reply Supp. Mot. Dismiss & Opp'n Pl.'s Mot. Summ. J. (Defs.' Opp'n") at 4–5, ECF No. 11.   In fact, several cases suggest otherwise.   *See Murway v. Blinken*, No. 21-cv-1618 (RJL), 2022 WL 493082, at *2 n.2 (D.D.C. Feb. 16, 2022) (questioning whether 8 U.S.C. § 1571(b) applies to visa cases alleging unreasonable delay in processing by consular officials at the State Department); *El Centro Reg'l Med. Ctr. v. Blinken*, No. 21-CV-00361-DMS-BDD, 2021 WL 3141205, at *4 & n.2 (S.D. Cal. July 26, 2021) ("[T]he plain text of § 1571 indicates that it applies to the processing of immigrant benefit applications by USCIS, not consular officials at the State Department.").   Accordingly, § 1571(b) cannot here carry the weight that plaintiff would like it to shoulder.

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020); *see Skalka*, 246 F. Supp. 3d at 154 (collecting cases).   No bright lines have been drawn in this context, but "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Sarlak*, 2020 WL 3082018, at *6 (quoting *Yavari v. Pompeo*, No. 19-cv-02524-SWW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)); *see also Skalka*, 246 F. Supp. 3d at 154 (concluding based on "comparable cases" that "a delay of [two years] does not typically require judicial intervention").   Plaintiff cites no persuasive caselaw holding otherwise.   Furthermore, a court in this District deemed a longer delay of forty-two months to be reasonable under the first and second

*TRAC* factors.  *See Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-cv-3592 (ABJ), 2021 WL

5356284, at *6 (D.D.C. Nov. 16, 2021) (finding that a delay of forty-two months was "insufficient

to warrant emergency relief in this district").  Accordingly, the thirty-month delay in this case is

not long enough to tilt the first two *TRAC* factors in favor of plaintiff.

Of course, whether a "rule of reason" exists for agency action "cannot be decided in the

abstract, by reference to some number of months or years beyond which agency action is presumed

to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the

significant (and permanence) of the outcome, and the resources available to the agency." *Mashpee*

*Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).  Defendants

explain that "the operational impacts of COVID-19 have delayed scheduling" the consular

interview required to adjudicate plaintiff's visa application.  Defs.' Mot. at 3, 10.  In March 2020,

five months after USCIS approved plaintiff's petition and forwarded the application to NVC, U.S.

embassies and consulates shut down due to the COVID-19 pandemic.  Although the State

Department authorized a phased resumption of visa services in July 2020, the department gave

broad discretion to embassies and consulates to determine how to prioritize visa appointments as

safely as possible in all visa categories.  The temporary suspension and limited resumption of

services has resulted in a substantial backlog at the U.S. Embassy in Jordan.  *Id*.  Given this backlog

and ongoing public health considerations impacting consular staff operations, the first two *TRAC*

factors tilt decisively in defendants' favor.  *See Murway*, 2022 WL 493082, at *3 (finding that

"operational delays due to the COVID-19 pandemic favor the Government on the first two [*TRAC*]

factors"); *Zaman*, 2021 WL 5356284, at *6 (same); *Khan v. Blinken*, No. 21-cv-1683 (JEB), 2021

WL 5356267, at *3 (same); *see also Tate v. Pompeo*, 513 F. Supp. 3d 132, 151 (D.D.C. 2021)

(finding that the government's determination of "how to allocate scarce resources in a global pandemic outweigh[s] [visa applicants'] interests in immediate adjudication of their visas").

### 2.      *TRAC Factors 3 & 5*

The third and fifth factors consider whether "human health and welfare are at stake" and the "nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80.  The delay in processing the visa application has exacerbated the prolonged separation endured by plaintiff and his wife, causing a "profound and negative impact" on both their lives.  Compl. ¶¶ 1, 18.  This Court acknowledges that the "prolonged and indefinite separation" of spouses may place health and welfare at stake.  *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (finding the third and fifth *TRAC* factors to weigh in plaintiff's favor in light of the prolonged separation of spouses); *see also Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) (finding the third and fifth *TRAC* factors to weigh in plaintiff's favor in light of the prolonged separation of an engaged couple); *Tate*, 513 F. Supp. 3d at 150 (finding the third and fifth *TRAC* factors to weigh in plaintiffs' favor in light of the separation of friends, family, and loved ones).  Defendants do not argue otherwise but emphasize that scheduling the visa interview "has been delayed further due to measures necessary to prevent the spread of COVID-19 and protect the safety of U.S. officials— and visa applicants—abroad."  Defs.' Mot. at 14.  This point is well-taken, but the nature of plaintiff's interests and the prejudice to those interests from delay in processing the visa still weigh in his favor.

### 3.      *TRAC Factor 4*

The fourth *TRAC* factor addresses whether expediting a visa application "would harm other agency activities of equal or greater priority."  *Sarlak,* 2020 WL 3082018, at *6.  The D.C. Circuit affords the fourth *TRAC* factor great weight, *Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d

at 1100, and it conclusively favors defendants' position here.  As discussed above, defendants face an extraordinary backlog of visas not only in the embassy in Jordan but across the world. Accordingly, deference must be given to the State Department's priority-setting and resource-allocation decisions.  *See Milligan*, 502 F. Supp. 3d at 319 ("[D]elays stemming from resource-allocation decisions simply do not lend themselves to 'judicial "reordering[s] [of] agency priorities."' (alterations in original) (quoting *Bagherian*, 442 F. Supp. 3d at 96); *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) ("[W]here resource allocation is the source of the delay, courts have declined to expedite action because of the impact on competing priorities."); *Tate*, 513 F. Supp. 3d at 149 ("Relief that would simply 'reorder' a queue of applications seeking adjudication is generally viewed as inappropriate when 'no net gain' in such adjudications is achieved."  (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991))); *see also, e.g., Am. Hosp. Ass'n*, 812 F.3d at 192 (collecting cases that "rejected mandamus claims that would have had the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants").

Plaintiff responds that the idea of a queue is "a fiction," Pl.'s Opp'n at 11, and that he and his family "should not be penalized for a lack of agency resources," Pl.'s Reply at 6.  First, the website for the U.S. Embassy in Jordan shows that the existence of a queue is a fact and not fiction. It advises that "all applicants whose cases are . . . *pending an appointment date from the [NVC] . . .* will receive [their] appointment date on a first-in, first-out basis."  *Immigrant Visas*, U.S. EMBASSY IN JORDAN, https://jo.usembassy.gov/visas/immigrant-visas/ (last visited Apr. 19, 2022) (emphasis in original).  Second, despite the significant burdens the pandemic and defendants' necessary responses impose on blameless applicants, D.C. Circuit precedent recognizes "no basis for reordering agency priorities" when an "agency is in a unique—and authoritative—position to

. . . allocate its resources in the optimal way." *In re Barr Labs*, 930 F.2d at 76.  As a result, the

fourth factor weighs in defendants' favor.

### 4.     *TRAC Factor 6*

Finally, the sixth and final factor weighs in defendants' favor.  "[T]he court need not 'find

any impropriety lurking behind agency lassitude in order to hold that agency action is

"unreasonably delayed."'"  *TRAC*, 750 F.2d at 80 (quoting *PCHRG v. FDA*, 740 F.2d 21, 34 (D.C.

Cir. 1984)).  Here, however, the government's good faith efforts to address processing delays

caused by the pandemic weigh against relief.  *See Tate*, 513 F. Supp. 3d at 150 (holding the same

(citing *Liberty Fund, Inc.*, 394 F. Supp. 2d at 119–20)).  Plaintiff is understandably frustrated that

defendants' lack of resources and response to the pandemic has unfairly resulted in profound

hardship for him and his wife, but does not allege any impropriety or dispute that the government

"ha[s] acted in good faith to address the delays caused by the pandemic."  Defs.' Opp'n at 9; *see*

Pl.'s Reply at 8.

### 5.     *TRAC Factors Considered in their Totality*

Considering the six *TRAC* factors in their totality, plaintiff has not stated a claim under the

Mandamus Act or the APA for unreasonable delay.  *See Zaman*, 2021 WL 5356284, at *6–8

(reaching the same conclusion); *Mahmood*, 2021 WL 5998385, at *9 (same); *Milligan*, 502 F.

Supp. 3d at 320 (same); *Murway*, 2022 WL 493082, at *5 (same).  The Court sympathizes with

plaintiff's concerns—the delays in visa processing have resulted in a prolonged separation of

plaintiff's family and challenging hardships.  Many other individuals are in similarly trying

circumstances, however, and defendants face challenges in determining how best to deploy scarce

resources during an unprecedent global pandemic.  Taking the factors as a whole, the rule of reason

found in the caselaw coupled with "the government's interests in balancing its own priorities" and

17

determining how to allocate scarce resources in a global pandemic outweighs the real hardship this delay has caused plaintiff and his wife. *Milligan*, 502 F.Supp.3d at 320 (quoting *Bagherian*, 442 F. Supp. 3d at 95–96); *see, e.g., Am. Hosp. Ass'n*, 812 F.3d at 192 (collecting cases "reject[ing] mandamus claims that would have had the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants"). Although the State Department's delay does not warrant judicial intervention at this juncture, as circumstances surrounding the pandemic change, the Court's consideration of these factors might also change in the face of continued extended delays.

## IV.   CONCLUSION

For the reasons given, defendants' motion to dismiss is granted.  Plaintiff's motion for summary judgment is denied.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: April 21, 2022

_____
BERYL A. HOWELL
Chief Judge